IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENABI T. HEMMER

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 3:15-cv-00374-MA

OPINION AND ORDER

JAMES S. COON
820 S.W. 2nd Avenue, Suite 200
Portland, OR 97204

    Attorney for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

JOHN C. LAMONT
Social Security Administration - Region X
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Jenabi T. Hemmer seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 3, 2010, alleging disability beginning December 23, 2005, due to injuries to his left shoulder and low back resulting from an automobile accident. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on April 28, 2013, at which plaintiff appeared with his representative and testified. A vocational expert, Nancy E. Bloom, also attended the hearing and testified. On May 31, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1976, plaintiff was 29 years old on his alleged disability onset date and 34 years old on his date last insured. Plaintiff has a eleventh grade education and completed training as an auto glass installer. Plaintiff has past relevant work as an automobile glass technician and a construction laborer.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step

is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

Plaintiff meets insured status requirements for a DIB application through September 30, 2010. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from his alleged onset date of December 23, 2005 through his date last insured of September 30, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease with post laminectomy syndrome and epidural fibrosis, and left AC (acromioclavicular) joint impingement with status post arthroscopic repair. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") to perform sedentary work but with the following limitations:

> no climbing of ladders, ropes, or scaffolds and avoiding even moderate exposure to hazards; frequent balancing; occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs; with the dominant right arm occasional overhead reaching; with the non-dominant left arm no overhead reaching, and frequent reaching in all other directions; and the use of cane at all times with standing or walking.

Transcript of Record ("Tr."), ECF No. 11 at 21.

At step four, the ALJ found that plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can

3 - OPINION AND ORDER

perform, such as charge account clerk, document preparer, and addresser. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from December 23, 2005 through September 30, 2010, his date last insured.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ improperly evaluated the opinion of his treating physician Christina Yun Lee, M.D., and erroneously omitted a limitation that plaintiff "must move periodically to relieve some pain" from the RFC. The Commissioner argues that even if the ALJ erred, plaintiff has not demonstrated harmful error because the jobs identified by Vocational Expert ("VE") can be performed with a "sit-stand option at the employee's choice."

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

I. **The ALJ Properly Evaluated Dr. Lee's Medical Source Statement**

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Molina, 674 F.3d at 1111. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson*, 359 F.3d at 1195.

Plaintiff argues that the ALJ erred by failing to provide specific and legitimate reasons for ignoring his treating physiatrist Christina Yun Lee's September 30, 2010 medical source statement that plaintiff must "move periodically to relieve some pain." Plaintiff contends that the ALJ was required to provide specific and legitimate reasons for rejecting that specific limitation, or alternatively, incorporate the limitation into the RFC. According to plaintiff, because the ALJ failed to do either, when Dr. Lee's periodic movement limitation is credited as a matter of law, the descriptions for the sedentary jobs identified by the VE make it clear that plaintiff is unable to perform them, and consequently, he is disabled under the act. Plaintiff's arguments miss the mark.

On September 30, 2010, plaintiff was referred to Dr. Lee by his neurosurgeon Carrie Schulman, M.D., for consideration of epidural steroid injections and evaluation of ongoing low back pain and left lower extremity neuropathy following an L4-5 laminectomy with diskectomy performed

in April 2009.[1] Dr. Lee reviewed plaintiff's June 19, 2010 lumbar spine MRI and noted that it showed post-surgical changes and scarring, without evidence of a new disk protrusion or herniation. Tr. 961. Dr. Lee's notes reflect that plaintiff reported constant pain in his low back and left lower extremity down to his left foot that had been worsening over the previous two to three months. Tr. 961. Plaintiff reported increased pain with prolonged sitting, standing in one position, and walking, and that lying down provides the greatest relief. As the ALJ noted, Dr. Lee observed that "[plaintiff] must move periodically to relieve some pain," he could stand independently, and had an antalgic gait on the lower left extremity with decreased weightbearing. Tr. 28, 961. Plaintiff informed Dr. Lee that he owns his own body shop, was then working, but was minimizing his work load. Tr. 961.

Dr. Lee's physical examination of plaintiff showed a decreased range of motion with reports of pain in the low back, Spurling testing revealed pain extending to the left lower extremity, and straight leg testing on the left demonstrated reduced range of motion with pain extending to the left foot. Dr. Lee's notes also show plaintiff reported pain in the left buttock and left sacro-iliac join, but that plaintiff had 5/5 muscle strength in the right, and 4+/5 muscle strength in the left, with sensation subjectively limited in the left L5 and S1 distribution. Tr. 962. Dr. Lee recommended a trial of epidural steroid injections and prescribed baclofen, a muscle relaxer, for muscle spasms and myofascial pain in plaintiff's low back and left buttock area. Tr. 962. Dr. Lee indicated that if the injections are helpful, physical therapy may be warranted. Tr. 962.

---

[1] Plaintiff was examined by Dr. Lee on several occasions for assessment of whether injections would relieve his ongoing complaints of pain in his low back, left lower extremity, and left shoulder. Plaintiff met with Dr. Lee in December 2008, April 2009, December 2009, January 2010, September 2010, and October 2010. Tr. 883-86, 872-74, 960-62, 975-78, 980-81. It is noteworthy that the record for this case spans over 1,200 pages, and that plaintiff challenges only the ALJ's failure to include a single statement from Dr. Lee.

Initially, I note that Dr. Lee did not conduct a physical capacity evaluation and her treatment notes do not detail specific functional limitations. The purpose of plaintiff's September 30, 2010 consultation with Dr. Lee was to assess the efficacy of steroid injections. Indeed, aside from Dr. Lee's observation that plaintiff moved periodically to relieve some pain, she did not provide an opinion as to how long plaintiff is capable of sitting, standing, needs breaks, or must change positions.

Next, Dr. Lee's observation that plaintiff must move periodically to relieve some pain, even if characterized as a limitation, is contradicted by the opinion of nonexamining agency physicians Sharon Eder, M.D., and Neal E. Berner, M.D. On February 22, 2011, Dr. Eder completed a Residual Functional Capacity ("RFC") Assessment. Tr. 90-103. Dr. Eder indicated that plaintiff could frequently or occasionally lift and carry 10 pounds, could stand or walk for two hours, sit for six hours, could do unlimited pushing and pulling, and could occasionally climb ramps or stairs, stoop, kneel, crawl or crouch, and frequently balance. Tr. 99. Dr. Eder determined that plaintiff could perform limited overhead reaching bilaterally, and must avoid even moderate exposure to hazards. Tr. 100. Dr. Eder did *not* opine that plaintiff was required to move periodically, needed to change positions, or that he would require more than normal breaks. On November 15, 2011, Dr. Berner affirmed Dr. Eder's RFC. Because Dr. Lee's opinion was contradicted, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting it.

In the decision, the ALJ thoroughly discussed Dr. Lee's September 30, 2010 evaluation. The ALJ found that Dr. Lee's detailed assessment did not "impos[e] any additional significant limitations" beyond those described in the RFC, which limited plaintiff to a reduced range of

7 - OPINION AND ORDER

sedentary work. Although the ALJ did not specifically discount Dr. Lee's alleged functional limitation that plaintiff must periodically move to relieve some pain, the ALJ did discuss plaintiff's pain allegations thoroughly when evaluating his credibility and his ongoing left shoulder and low back pain complaints when evaluating the medical evidence. Notably, plaintiff does not challenge the ALJ's negative credibility assessment or the ALJ's evaluation of the remaining voluminous medical record.

The ALJ's negative credibility determination rested on plaintiff's symptom magnification and lack of objective medical evidence. The lengthy record shows that plaintiff suffered on-the-job injuries in a motor vehicle accident in December 2005. Tr. 25. Following surgical repair to his left shoulder, surgical repair of a deviated septum, and physical therapy, plaintiff was released to return to work in August 2007 with permanent restrictions to his left shoulder. Tr. 26. Because of these restrictions, plaintiff was unable to return to his previous work as an auto glass installer. However, plaintiff continued to have pain complaints concerning his low back and left lower extremity. In April 2009, plaintiff underwent an L4-5 laminectomy with diskectomy. As the ALJ noted, plaintiff had good results, with a gradual return of numbness and tingling. Tr. 27. As accurately noted by the ALJ, plaintiff reported to Dr. Lee on September 30, 2010, that his increased pain had been present for two to three months. Tr. 28.

As the ALJ thoroughly discussed, by 2010, plaintiff's physicians found scant objective evidence for plaintiff's continued alleged pain, despite numerous testing, imaging, and consultations. To be sure, as the ALJ stated, in October 2010, Dr. Lee performed electrodiagnostic nerve testing and found no evidence of an active radiculopathy to explain plaintiff's pain, despite plaintiff's complaint of a sudden onset of pain and numbness in the left foot. Tr. 29, 872. At that visit, Dr. Lee

observed that plaintiff was using a walker for ambulation and could not tolerate standing. Tr. 874. Plaintiff was referred to neurologist Greg R. Zarelli, M.D., who examined plaintiff on November 19, 2010. Dr. Zarelli noted that plaintiff complained about numbness in the left lower extremity, progressing to his left arm, as well as his left eye. Tr. 866. Dr. Zarelli indicated that "a large portion of [plaintiff's] exam does not make sense neurologically," and that plaintiff's sensory allegations "are so profound they are not possibly neurologic." Tr. 869. As the ALJ correctly described, Dr. Zarelli indicated that plaintiff's "presentation is functional in nature, either secondary to a conversion disorder and/or malingering." Tr. 30, 868. And, as the ALJ further discussed, an examination by Benjamin B. Brennan, M.D., demonstrated an unreliable motor exam with give-away weakness. Tr. 1056-59. The ALJ's negative credibility findings are wholly supported by substantial evidence in the record and are unchallenged by plaintiff.

Therefore, having thoroughly reviewed all of Dr. Lee's treatment records and the record as a whole, I conclude the ALJ rationally interpreted Dr. Lee's September 30, 2010 medical source statement as not imposing additional significant limitations beyond those accounted for in the RFC. Moreover, the ALJ appropriately accounted for plaintiff's pain complaints elsewhere in the decision, and the ALJ's findings are supported by substantial evidence in the record as a whole. *Valentine*, 574 F.3d at 691-93 (finding physician's observation about claimant's PTSD was not a diagnosis or functional limitation that was required to be included in the RFC); *see also Bayliss*, 427 F.3d at 1217 (noting ALJ only is required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary"). Based on the record before me, the ALJ reasonably and rationally interpreted the evidence concerning plaintiff's pain complaints, and did

not err in assessing Dr. Lee's opinion. *Molina*, 674 F.3d at 1111 (finding rational interpretations of the evidence must be upheld if they are supported by substantial evidence). The ALJ's decision is supported by substantial evidence in the record as whole and free of legal error, and accordingly, is affirmed.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this **29** day of FEBRUARY, 2016.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge